```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA
                            AT CHARLESTON


THE SANITARY BOARD OF THE CITY
OF CHARLESTON, WEST VIRGINIA,
a municipal utility,

            Plaintiff,

v.                                     Civil Action No. 2:18-cv-01100

COLONIAL SURETY COMPANY, a
Pennsylvania corporation; and
PARTNERRE INSURANCE COMPANY OF
NEW YORK, a New York corporation,

            Defendants.

and

COLONIAL SURETY COMPANY, a
Pennsylvania Corporation,

            Third-Party Plaintiff,

v.

TRI-STATE PIPELINE, INC., an Ohio
corporation; and ERIC D. TAYLOR,

            Third-Party Defendants and
            Fourth-Party Plaintiffs,

v.

BURGESS & NIPLE, INC., an Ohio
corporation,

            Fourth-Party Defendant.
```

## MEMORANDUM OPINION AND ORDER

Pending is a motion to dismiss, filed October 22, 2018 by Burgess & Niple, Inc., ("Burgess & Niple" or "Engineer" or "B&N"), seeking to dismiss the complaint filed against it by third-party defendant and fourth-party plaintiff Tri-State Pipeline, Inc. ("Tri-State" or Contractor").

### I. Facts and Procedural Background

This case arises from a project to improve the sewer systems of Charleston, West Virginia. Specifically, according to the fourth-party complaint, "[o]n or about July 26, 2016, The Sanitary Board of the City of Charleston, West Virginia (the ["Sanitary Board" or "CSB"]) accepted bids for Contracts 15-1 'Porters Branch & Spring Branch Sanitary Sewer Improvement' and 15-2 'Callie Road & Anderson Heights Road Sanitary Sewer Improvements'. These contracts involved gravity sewer line replacement, manhole installation, house service connections, restoration of pavement and other related work." Compl. ¶ 6. As part of the bidding process, the Sanitary Board "provided prospective bidders with the project design prepared by [Burgess & Niple], including plans, specifications, bid documents, and other contract documents," each prepared by Burgess & Niple, the project engineer, for the Sanitary Board. Id., ¶ 8. According

to Tri-State, "[t]hese bidding documents were intended to provide a 'road map' for prospective bidders to allow reasonable anticipation of conditions in the work area and to allow them to prepare accurate bids for the work." Id.

Tri-State submitted a bid, "[i]n specific reliance upon the Plans, Specifications and other bidding information prepared by [Burgess & Niple.]" Id., ¶ 9. The Sanitary Board accepted Tri-State's bid and on September 22, 2016, the parties entered into an agreement for the completion of both projects for a contract price of $9,876,186.44. Id., ¶ 10. The contract had a start date of on or about October 10, 2016, and provided that substantial completion should be achieved in 330 calendar days, with final completion 30 days thereafter. Id., ¶ 12. Burgess & Niple served as the Project Engineer and "the [Sanitary Board's] onsite representative during the construction project." Id., ¶ 11.

Tri-State immediately suffered delays in its performance, allegedly "as a result of [Burgess & Niple]'s changing and dictating Tri-State's planned manner and method of performance, failing to adequately and timely review and approve submittals, failing to recommend payment for materials and work provided, failing to recommend and approve requests for

extensions of time, failing to investigate and initiate change orders for changed work for extra work resulting from unforeseen or changed site conditions as to when it had notice," each of which Tri-State contends constitutes a breach of Burgess & Niple's duties owed to Tri-State. Id., ¶ 13. Tri-State alleges that "[i]n its capacity as the design and project engineer for the Project and as the Owner's representative on the Project, B&N owed a duty of care to Tri-State to render its services, including, but not limited to, design, preparation of drawings, specifications, and contract documents, together with administration of the Project, recommending and improving payment and change order requests, with the ordinary skill, care and diligence commensurate with that rendered by members of its profession in the same or similar circumstances." Id., ¶ 14.

Specifically, Tri-State alleges in paragraph 15 that Burgess & Niple breached its duties owed to it by:

> a. failing to prepare adequate and accurate drawings, plans and specifications, and contract documents for use in the construction of the Project;
>
> b. failing to timely and adequately investigate, consider, approve and process change orders for extra and additional work, performed by Tri-State at the direction of B&N or the CSB, the Project Owner, as well as requests for extensions of time;
>
> c. failing to adequately and properly administer the Contract as the project owner's representative;

4

> d. directing, altering, and dictating Tri-State's manner and method of performance and requiring unnecessary and additional work without recommending additional compensation;
>
> e. failing to timely and adequately address and approve submittals, address requests for clarification and/or corrections to the project plans and specifications, and to timely and adequately respond to requests for change orders, and claims; and
>
> f. failing to act as an impartial arbiter with respect to claims and disputes between the CSB and Tri-State and refusing to investigate and recommend payment for claims submitted by Tri-State or as to which it had adequate notice[; and]
>
> g. recommending and/or approving the CSB's wrongful termination of Tri-State's contract.

**Id.**, ¶ 10. Tri-State alleges that these actions or inactions constitute negligence by Burgess & Niple as "a failure to render its services with the ordinary skill, care and diligence commensurate with the members of the engineering profession under similar circumstances." **Id.**, ¶ 16. Tri-State further alleges that "[a]s a direct, proximate and foreseeable result of B&N's breach of its duties owed to Tri-State, Tri-State has suffered substantial financial losses including, but not limited to, the cost of additional work performed, extra costs resulting from delays and lost productivity, loss of business opportunities, loss of profit, aggravation and annoyance." **Id.**, ¶ 17.

This lawsuit commenced on June 29, 2018, when the Sanitary Board filed a complaint against Colonial Surety Company, the surety on the project, and PartnerRe Insurance Company of New York, the re-insurer surety on the project, invoking the court's diversity jurisdiction.  <u>See</u> Original Complaint, ECF # 1.  Thereafter, on August 28, 2018, defendants Colonial Surety Company and PartnerRe Insurance Company of New York filed an answer to the complaint, accompanied by a third-party complaint by Colonial Surety Company against third-party defendants Tri-State and Eric D. Taylor, Tri-State's president.  <u>See</u> Answer and Third-Party Complaint, ECF # 16.  Then, on September 20, 2018, the third-party defendants filed an answer to the third-party complaint, along with a crossclaim by Tri-State against the plaintiff and the instant fourth-party complaint by Tri-State against Burgess & Niple, Inc.  <u>See</u> Answer, Crossclaim and Fourth-Party Complaint, ECF # 22.

Tri-State brings its claim for negligence, seeking judgment against Burgess & Niple, "in the amount of $5,000,000.00, or such other amount as will fully and fairly compensate the Fourth-Party Plaintiff for the Fourth-Party Defendant's negligent acts and omissions."  Compl., WHEREFORE clause.

On October 22, 2018, Burgess & Niple filed its motion to dismiss Tri-State's fourth party complaint under Rule 12(b)(6). ECF # 30. Tri-State filed a response in opposition on November 5, 2018, ECF # 37, to which Burgess & Niple replied on November 13, 2018, ECF # 38.

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

"In resolving a motion pursuant to Rule 12(b)(6)[,] a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 12(d)). "A court may, however, consider a 'written instrument' attached as an exhibit to a pleading, 'as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" Id. (alteration in original) (internal citation omitted) (quoting Fed. R. Civ. P. 10(c) and Phillips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

A district court's evaluation of a motion to dismiss is underlain by two principles. First, the court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

III. Discussion

"[I]n a negligence suit, a plaintiff is required to show four basic elements: duty, breach, causation, and damages." Hersh v. E-T Enterprises, Ltd. P'ship, 232 W. Va. 305, 310 (2013).

In its motion to dismiss, Burgess & Niple presents one argument: that Tri-State has failed to establish that Burgess & Niple owed it any duty. Specifically, Burgess & Niple states that "because the contractual terms upon which Tri-State relies expressly and unambiguously eliminate any such duty owed to Tri-State by Burgess & Niple, there are simply no duties manufactured by the contractual terms governing Burgess & Niple's role as Engineer." Memo. in Supp., ECF # 31, at 7.

The terms to which Burgess & Niple refers are found in Section 9.09 of the General Conditions of the Construction Contract between Tri-State and the Sanitary Board, attached to the motion to dismiss as exhibit A, which states:

> (A) Neither Engineer's authority or responsibility under this Article 9 or under any other provision of the Contract Documents nor any decision made by Engineer in good faith either to exercise or not exercise such authority of responsibility or the undertaking, exercise, or performance of any authority or responsibility by Engineer shall create, impose, or give rise to any duty in contract, tort, or otherwise owed by Engineer to Contractor[.]

9

Mot. to Dismiss, ECF # 30, Ex. A at 8-9.

In response, Tri-State argues that this apparent exculpatory clause to which it agreed should not apply for three reasons: first, the court should not consider the language of the complaint at this stage; second, the clause is void as against public policy and unenforceable; and third, Burgess & Niple's alleged negligence fell outside its authority and responsibility under the contract.

As for the first argument, the court finds it appropriate to consider the contract language at this stage. Notably, "[t]he determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Aikens v. Debow, 208 W. Va. 486, Syl. Pt. 5 (2000). A document that is attached as an exhibit to a motion to dismiss may be considered by the court if it is integral to the complaint and the parties do not dispute its authenticity. See Phillips, 572 F.3d at 180. Such is the case here.

Although Tri-State claims that its "claim against B&N does not rely on any contract language, nor was there any contract or other document appended to its Fourth-Party Complaint[,]" Memo. in Opp., ECF # 32 at 5, any duty Burgess & Niple owed to Tri-State arose with Tri-State's performance under the contract. Indeed, the complaint references the contract several times: paragraphs 6 through 9 describe how Tri-State entered into the contract through the bidding process; paragraph 10 details the commencement of the contract and the contract price; paragraph 12 states the project's schedule under the contract; paragraph 15(c) alleges that Burgess & Niple failed to adequately and properly administer the contract in its role as the Sanitary Board's representative; and paragraph 15(g) states that Burgess & Niple was negligent in approving the Sanitary Board's alleged-wrongful termination of the contract.

Furthermore, although not referencing the contract directly, the allegations in paragraph 15(b), (d), (e), and (f), each pertain to the contract inasmuch as they refer to change orders, requests for extensions of time, alterations requiring additional work without additional compensation, and claims, of unknown nature, submitted by Tri-State; none of the allegations assert that Burgess & Niple acted negligently outside of events occurring during Tri-State's performance under the contract.

The contract is thus integral to the complaint and, because the parties do not dispute its authenticity, the court finds it appropriate to consider the terms found therein to determine whether Tri-State adequately pled negligence.

Second, Tri-State argues that the exculpatory clause as to Burgess & Niple is void for being against public policy. The parties do not dispute that generally, absent the clause at issue, Burgess & Niple would owe a duty to Tri-State. In <u>E. Steel Constructors, Inc. v. City of Salem, W.V.</u>, the West Virginia Supreme Court of Appeals found that contractors could bring a cause of action for negligence against design professionals hired by the same project owner because the parties have a special relationship:

> we expressly hold that a design professional (e.g. an architect or engineer) owes a duty of care to a contractor, who has been employed by the same project owner as the design professional and who has relied upon the design professional's work product in carrying out his or her obligations to the owner, notwithstanding the absence of privity of contract between the contractor and the design professional, due to the special relationship that exists between the two. Consequently, the contractor may, upon proper proof, recover purely economic damages in an action alleging professional negligence on the part of the design professional.

209 W. Va. 392, 401 (2001). The court reasoned:

> The contractor is a member of a limited class compiled of those contractors bidding on a particular project. Moreover, the facts that the contractor must rely on design documents to calculate his or her bid and, if successful in bidding, to construct the project, and may be further subject to oversight by the design professional during actual construction of the project, fulfills the requirement of the foreseeability of harm that would result from negligence on the part of the design professional. Finally, this resolution properly places the duty of care on the party who is in the best position to guard against the type of negligence herein asserted.

Id.

The court noted that "the specific parameters of the duty of care owed by the design professional to the contractor must be defined on a case-by-case basis[,]" because "the exact nature of the specific duty owed by a design professional *may* be impacted by provisions contained in the various contracts entered among the parties . . . , provided that such contractual provisions do not conflict with the law." Id. (emphasis in original). Nonetheless, "in general, the duty of care owed by a design professional to a contractor with whom he or she has a special relationship is to render his or her professional services with the ordinary skill, care and diligence commensurate with that rendered by members of his or her profession in the same or similar circumstances." Id.

Burgess & Niple claims that the facts of this case place it outside of E. Steel Constructors, Inc. inasmuch as Tri-State's contract with the Sanitary Board contained an exculpatory clause purporting to disclaim any duty that Burgess & Niple owed to Tri-State. In response, Tri-State contends that the exculpatory clause is unenforceable as contrary to public policy.

Generally, "[w]hen such an express agreement [to accept a risk of harm arising from a defendant's negligent conduct] is freely and fairly made, between parties who are in an equal bargaining position, and there is no public interest with which the agreement interferes," it will be upheld. Murphy v. N. Am. River Runners, Inc., 186 W. Va. 310, 315 (1991) (citing Restatement (Second) of Torts § 496B comment b (1963, 1964)). However, "[w]hen a statute imposes a standard of conduct, a clause in an agreement purporting to exempt a party from tort liability to a member of the protected class for the failure to conform to that statutory standard is unenforceable." Id., Syl. pt. 1. As the court in Murphy explained:

> a plaintiff's express agreement to assume the risk of
> a defendant's violation of a safety statute enacted
> for the purpose of protecting the public will not be
> enforced; the safety obligation created by the statute
> for such purpose is an obligation owed to the public
> at large and is not within the power of any private

**individual to waive.**

Id. See also Kyriazis v. Univ. of W. Virginia, 192 W. Va. 60, 66 (1994) (anticipatory release as to university void as a matter of West Virginia public policy: **"When a state university provides recreational activities to its students, it fulfills its educational mission, and performs a public service. As an enterprise charged with a duty of public service here, the University owes a duty of due care to its students when it encourages them to participate in any sport."**); and Finch v. Inspectech, LLC, 229 W. Va. 147, 157 (2012) (exculpatory clause as to home inspectors void: **"From the plain language of these home inspector regulations, it is clear that there exists in this State an established standard of conduct with which home inspectors are expected to comply in performing home inspections and in preparing reports for their clients. This standard of conduct renders unenforceable exculpatory clauses in home inspection contracts that purport to exempt home inspectors for their failure to comply with such conduct standards."**).

As an engineer, Burgess & Niple is subject to a state-imposed standard of conduct in West Virginia. W. Va. Code § 30-13-2 states:

> In order to safeguard life, health and property and to
> promote the public welfare, the practice of
> engineering in this state is hereby declared to be
> subject to regulation in the public interest. . . .
> Engineering is hereby declared a learned profession
> and its practitioners are held accountable to the
> state and the public by professional standards in
> keeping with the ethics and practice of other learned
> professions in this state. The practice of engineering
> is a privilege granted by the state.

The "practice of engineering" is defined as including:

> any service or creative work, the adequate performance
> of which requires engineering education, training and
> experience in the application of special knowledge of
> the mathematical, physical and engineering sciences to
> such services or creative work as consultation,
> investigation, evaluation, planning and design of
> engineering works and systems; . . . and the review of
> construction for the purpose of assuring compliance
> with drawings and specifications any of which embraces
> such services or work, either public or private, in
> connection with any utilities, structures, . . .
> projects and industrial or consumer products or
> equipment of a mechanical, electrical, hydraulic,
> pneumatic or thermal nature, insofar as they involve
> safeguarding life, health or property, and including
> such other professional services as may be necessary
> to the planning, progress and completion of any
> engineering services.

W. Va. Code § 30-13-3. The West Virginia Code creates a "board of registration for professional engineers[,]" § 30-13-4, who "may promulgate and shall adopt 'rules of professional responsibility for professional engineers.'" Any such rules "are binding to any person registered with the board under the provisions of this article. These rules are also applicable to

16

firms holding a certificate of authorization as provided in section seventeen of this article." W. Va. Code § 30-13-9.

The rules of professional responsibility, developed "to safeguard life, health and property, to promote the public welfare, and to maintain a high standard of integrity and practice," are found at W. Va. Code of State Rules § 7-1-12 and set forth various obligations to which engineers are subject. For instance, under the subsection entitled "Registrant's Obligation to Society[,]" the rules state: "Registrants shall approve and seal only those designs, plans or other documents that conform to accepted engineering standards and safeguard the life, health, property and welfare of the public." W. Va. Code St. R. § 7-1-12.3.b. Additionally, under the subsection entitled "Registrant's Obligation to Employer and Clients[,]" the rules state: "Registrants shall undertake assignments only when qualified by education or experience in the specific technical fields of engineering involved." Id. § 7-1-12.4.a.

It is thus apparent to the court that Burgess & Niple, as an engineer authorized to conduct business in the state of West Virginia,[1] is subject to state-imposed safety standards that

---

[1] Inasmuch as the complaint asserts that Burgess & Niple is authorized to conduct business in the state of West Virginia, Compl. ¶ 5, which Burgess & Niple does not refute, the court

may not be eradicated by contract.  The provision in Tri-State's contract with the Sanitary Board that purports to eliminate Burgess & Niple's duty is therefore void as against public policy.  Burgess & Niple, accordingly, cannot thereon rely to dismiss Tri-State's complaint against it.  Such being the sole argument presented by Burgess & Niple, its motion to dismiss is denied.[2]

IV. Conclusion

For the foregoing reasons, it is ORDERED that the Burgess & Niple's motion to dismiss be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record and any unrepresented parties.

ENTER: May 29, 2019

John T. Copenhaver, Jr.
Senior United States District Judge

---

draws the reasonable factual inference, as it must at this stage, that Burgess & Niple holds a certificate of authorization as provided in the West Virginia Code.

[2] Having found the exculpatory clause invalid, the court does not address Tri-State's third argument that Burgess & Niple's alleged negligence fell outside its authority and responsibility under the contract.