```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**THE SANITARY BOARD OF THE CITY
OF CHARLESTON, WEST VIRGINIA, a
municipal utility,**

      Plaintiff,

v.                            Civil Action No. 2:18-cv-01100

**COLONIAL SURETY COMPANY, a
Pennsylvania corporation, and
PARTNERRE INSURANCE COMPANY OF
NEW YORK, a New York corporation,**

      Defendants;

**and**

**COLONIAL INSURANCE COMPANY, a
Pennsylvania corporation,**

      Third-Party Plaintiff,

v.

**TRI-STATE PIPELINE, INC., and Ohio
corporation, and ERIC D. TAYLOR,**

      Third-Party Defendants and
      Fourth-Party Plaintiffs,

v.

**BURGESS & NIPLE, INC., an Ohio
corporation,**

      Fourth-Party Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is defendant and third-party plaintiff Colonial Surety Company's ("Colonial") motion to dismiss settled claims, filed December 17, 2021. Colonial Mot. Dismiss, ECF No. 489. The motion is accompanied by a supporting memorandum; the affidavit of Philip Shepard, Colonial's bond manager; and various exhibits. Third-party defendants and fourth-party plaintiffs Tri-State Pipeline, Inc. ("Tri-State") and Eric D. Taylor ("Taylor") have responded in opposition with a memorandum and exhibits, followed by Colonial's reply.

## I. Background

This action arises out of two closely related sewer system improvement projects in Charleston, West Virginia, which are treated herein as the "project". Plaintiff The Sanitary Board of the City of Charleston, West Virginia ("Sanitary Board"), awarded the project's construction contract to Tri-State for the sum of $9,879,560.85. Tri-State's surety for the project was Colonial, and Colonial's co-surety and reinsurer was defendant PartnerRe Insurance Company of New York ("Partner").

Under its performance and payment surety bonds, Colonial was financially liable to the Sanitary Board conditioned on Tri-State's performance of its contractual

obligations owed to the Sanitary Board for the project.  See Surety Bonds, ECF No. 488-3.[1]  In turn, Tri-State and Taylor entered into an Indemnity Agreement by which they indemnified Colonial for all losses and expenses incurred by Colonial as a result of the performance and payment bonds issued on behalf of Tri-State.  Ultimately, for a number of reasons including failure to meet deadlines and several stop work orders, the Sanitary Board terminated its contract with Tri-State for cause after paying Tri-State $3,225,323,42, and retained another contractor, Pipe Plus, to complete the project for $6,598,595.39.  This suit followed.  A thorough background of the events underlying this action can be found in the court's two memorandum opinion and orders entered August 27, 2021.

    Relevant to Colonial's pending motion to dismiss settled claims, the Sanitary Board filed this suit against Colonial for breach of contract related to the surety bonds, and for common-law and statutory bad faith related to Colonial's performance under the surety bonds.  See Sanitary Board Am. Compl., ECF No. 10.  After being brought into the action by

---

[1] "A suretyship is a three-party relationship where the surety undertakes to perform to an obligee if the principal fails to do so. . . . In suretyship, the risk of loss remains with the principal while the surety merely lends its credit so as to guarantee payment or performance in the event that the principal defaults."  74 Am. Jur. 2d Suretyship § 1 (Feb. 2022 update) (footnotes omitted).

Colonial, Tri-State filed a "crossclaim" against the Sanitary Board for breach of contract.  <u>See</u> Tri-State Crossclaim, ECF No. 22.  The Sanitary Board responded with a counterclaim against Tri-State for breach of contract.  <u>See</u> Sanitary Board Crossclaim, ECF No. 76.

The court has decided as a matter of law that Tri-State breached its contract with the Sanitary Board and that the Sanitary Board lawfully terminated the contract for cause.  <u>See</u> Mem. Op. & Order 93, ECF No. 467.  The court also dismissed as a matter of law Tri-State's crossclaim for breach of contract against the Sanitary Board, except for two unpaid and yet unresolved contractual claims for payment stemming from two "instances of changed work, delays, [or] unforeseen or changed site conditions that resulted in a financial loss to Tri-State."  <u>See</u> <u>id.</u> at 61, 93.  Thus, remaining issues at that stage would be the damages related to the Sanitary Board's breach of contract action against Tri-State and Tri-State's action against the Sanitary Board for the two unresolved contractual claims.  Also remaining would be the Sanitary Board's breach of contract action against Colonial.

Now, Colonial claims it has entered into a settlement agreement with the Sanitary Board resolving these issues and completely disposing of the Sanitary Board's amended complaint

against Colonial, Tri-State's crossclaim against the Sanitary Board, and the Sanitary Board's counterclaim against Tri-State. Colonial Mem. Supp. 2, 2 n.1, 2 n.2.[2]  Colonial seeks dismissal of the three settled actions.  Id.

## II. Standard of Review

Colonial filed its motion pursuant to Federal Rule of Civil Procedure 41(a)(2).  See Mot. Dismiss, ECF No. 488.  Rule 41(a)(2) provides that, unless under circumstances not present here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).  A request for dismissal under Rule 41(a)(2) is addressed to the district court's discretion.  Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987).

## III. Discussion

Colonial contends that it had authority to settle the claims by and against Tri-State because it is Tri-State's

---

[2] The settlement does not dispose of every claim currently pending in this action.  "Tri-State's claims against Burgess & Niple, Inc. and Colonial's claims against Tri-State and [third-party defendant and fourth-party plaintiff] Eric D. Taylor are not resolved by the Settlement Agreement or subject to Colonial's motion."  Colonial Mem. Supp. 2 n.3.

"assignee and attorney-in-fact . . . pursuant to the terms of" the Indemnity Agreement between them. Colonial Mem. Supp. 2. Tri-State does not contend that Colonial as its surety lacked the authority to settle the affected claims. See Tri-State Resp. 3. Rather, Tri-State contends that the court should deny Colonial's motion and void the settlement because Colonial violated its "clear . . . obligation to act in good faith and in a manner that is not unreasonable" when settling the claims. See id.

In West Virginia, sureties are obligated to exercise good faith, including a duty "to consult with the principal for the purpose of obtaining his consent to a proposed settlement," and to effectuate reasonable settlements because they are effectively dealing with the money of principals like Tri-State. See Syl., Fidelity & Cas. Co. of N.Y. v. McNamara, 36 S.E.2d 402 (W. Va. 1945). The reason for this rule is that "the surety would have nothing to lose by an unfavorable settlement. It would simply be dealing with the principal's money without regard to the principal's interest and without any risk to itself." Id. at 404. "On the other hand there must be withheld from the principal on a surety bond the right to refuse arbitrarily to agree to a reasonable settlement made in good faith." Id. The issue manifests now and when the surety turns

to the principal for reimbursement for the settlement to which it agreed on the principal's behalf, as Colonial has done in its third-party complaint against Tri-State.  <u>See</u> Colonial Third-Party Compl., ECF No. 16.

In evaluating the reasonableness of the settlement entered into by Colonial, it is necessary that there be consideration of the present posture of the case.  By order entered on August 27, 2021, the court granted the Sanitary Board's summary judgment motion in the course of determining that the Sanitary Board had terminated the contract with Tri-State for cause for multiple valid reasons.  Those reasons included each of the several work stoppages occasioned by Tri-State's default and its persistent failure to perform the work in accordance with the contract, as a result of which Tri-State completed only 40.6% of the work after 14 months on a 12-month contract.  The termination of Tri-State was followed by the Sanitary Board's engagement of another entity to complete the job, which required the Sanitary Board to pay substantial additional sums for the prolonged work to its engineering firm, Burgess & Niple, who was engaged to monitor and oversee the contract work.

The court also determined at the same time that the Sanitary Board had paid Tri-State all of that to which it was

7

entitled on the contract except for the two claims that remain unresolved in the aggregate amount of $357,797.47.

In reaching a settlement with the Sanitary Board for the sum of $1,850,000, Colonial took into account the following expenditures made by the Sanitary Board and claimed by the Sanitary Board against Tri-State and Taylor as well as the surety, Colonial, as documented by Michael D. Griffith, CPA, of the firm, Griffith & Associates, PLLC, in his letter of January 22, 2020, addressed to the Sanitary Board:

| $ | 98,235.12 | for paving costs paid by the Sanitary Board to the City of Charleston due to Tri-State's failure to perform its paving restoration obligations |
|---|---|---|
| | 202,120.87 | for paving of roadways and clean-up costs incurred after termination due to Tri-State's failure to perform these jobs while on the project |
| | 2,022,916.40 | excess engineering costs due to the termination and completion of the project by Pipe Plus |
| $ 2,323,272.39 | | |

With respect to the $2,022,916.40 in excess engineering costs, Mr. Griffith notes that the Sanitary Board's original contract amount with Burgess & Niple for the project came to $2,473,200.00 as approved September 22, 2016, by the West Virginia Department of Environmental Protection.  The total

paid by the Sanitary Board to Burgess & Niple on the project as of January 22, 2020, is $4,496,116.40 which, after deducting the original $2,473,200.00, equals the estimated excess engineering costs claimed by the Sanitary Board as a result of Tri-State's default.

The Sanitary Board also claims $676,683.51 in legal costs as of January 22, 2020, a figure that continues to grow, but the recoverability of which is doubtful inasmuch as attorney fee recovery is not specified in the governing materials.

In addition to the $1,850,000, Colonial as attorney-in-fact for Tri-State is canceling any claim Tri-State may have against the Sanitary Board, which would include the two claims made in the unsubstantiated amount of $357,797.47.  Even assuming the two Tri-State claims could be established in that amount, the total benefit of the settlement to the Sanitary Board would equal some $2,188,000 to satisfy the Sanitary Board's expenditures above of some $2,323,000 without any credit for interest (which the court estimates to be in the hundreds of thousands of dollars) and attorney fees.

Following entry of the court's order of August 27, 2021, Colonial undertook settlement negotiations with the Sanitary Board, resulting in what Colonial describes as an "agreement-in-principle" as set forth above.  Colonial through

its attorneys apprised Tri-State and Taylor through their attorneys of the proposal. Counsel for Tri-State and Taylor state in their email letter to Colonial's counsel dated September 24, 2021, that it is a response to Colonial's "counterproposal," which they "flatly rejected." The rejection was accompanied in the email letter by both a demand for "due compensation from the Surety" and the following admonition: "[P]lease advise the Surety that any attempt to release or otherwise adversely affect Tri-State['s] ongoing claims against [the Sanitary Board and Burgess & Niple] will further subject the Surety to first party bad faith liability."[3] Tri-State Sept. 24, 2021, Letter, ECF No. 488-5.

In addition, as noted in the December 16, 2021, affidavit by Philip Shepard that accompanies Colonial's motion and supporting memorandum of December 17, 2021, Tri-State and Taylor "would only agree to release their claims against the [Sanitary] Board if Colonial waived all its rights under the Indemnity Agreement against the Indemnitors, and, pay substantial attorneys' fees to the Indemnitors' attorneys related to the Lawsuit." Shepard Aff. ¶ 43, ECF No. 488-1; see also Colonial Mem. Supp. 8 (stating the same). The Shepard

---

[3] As noted above, the settlement agreement does not purport to deal with Tri-State's claim against Burgess & Niple.

quoted statements stand undisputed. The waiver would include the $1,850,000 and the $534,232,21 Colonial has paid under the payment bond to certain subcontractors and/or suppliers of Tri-State on the project whom Tri-State failed to pay and for which Colonial first demanded that Tri-State provide collateral security four years ago in a March 23, 2018, letter to Tri-State, which Tri-State has failed to do. See Shepard Aff. ¶¶ 27-28 (citing Mar. 23, 2018, Letter from Colonial to Tri-State, ECF No. 488-4). In the letter, Colonial submitted an itemized list of eight such claims then aggregating $411,561.44, as well as a claim by the Sanitary Board for "undetermined damages." Mar. 23, 2018, Letter from Colonial to Tri-State. In doing so, Colonial invoked Paragraph 7 of the Indemnity Agreement, which provides Colonial the right to "demand" "cash or other property . . . as collateral security to protect [Colonial]" from claims made against it. Indemnity Agmt. ¶ 7, ECF No. 488-2. The waiver would also include the considerable costs, expenses, and attorney fees incurred and to be incurred by Colonial.

That seems to have ended Colonial's effort as surety to consult with its principal, Tri-State and Taylor. Two months later Colonial filed the pending motion to dismiss settled claims on December 17, 2021, after Colonial and the Sanitary Board reached the Settlement Agreement on November 30, 2021.

Also relevant to Colonial's calculus in resolving the matter is Colonial's ongoing attorney fees, litigation costs, and peace of mind. While indeterminate at this juncture, such expenses are doubtless quite substantial.

The court finds that Colonial has entered into a settlement that falls within the range of reasonableness and appears to be in good faith after affording Tri-State and Taylor the opportunity to consider and to consent to the proposal or present reasonable alternatives. The response of Tri-State and Taylor was not only one of rejection but an arbitrary refusal that was accompanied by the extraordinary demand for "due compensation" and waiver by Colonial of its right of indemnification. Colonial has complied with the requirement of <u>McNamara</u> and, in view of the adamant response of Tri-State, is free to conclude the Settlement Agreement.[4]

Returning to Colonial's request for dismissal of the settled claims, the Fourth Circuit has set forth various factors a district court can consider when addressing a Rule 41(a) motion, such as "the opposing party's effort and expense in

---

[4] The court pauses to note that Tri-State retains the opportunity to raise, among others, its bad faith claim as a defense to Colonial's action for reimbursement under the Indemnity Agreement, as it has done as an affirmative defense in its answer to Colonial's indemnity action against it. <u>See</u> Tri-State Ans. to Third-Party Compl., ECF No. 22.

preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation." Howard v. Inova Health Care Servs., 302 F. App'x 166, 179 (4th Cir. 2008) (quotation marks omitted). At bottom, "[t]he purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). Inasmuch as the settled claims are fully resolved and there is no objection in the abstract to Colonial's authority to resolve them, and inasmuch as the settlement is a reasonable one, the parties will not be unfairly prejudiced by dismissal of the resolved actions under Rule 41(a)(2). Colonial's motion is granted.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that Colonial's motion to dismiss settled claims be, and hereby is, granted. All claims, actions, and causes of action alleged by the Sanitary Board against Colonial, Partner, and Tri-State, as well as all the claims, actions, and causes of action alleged by Tri-State against the Sanitary Board, are dismissed with prejudice.

**The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.**

**ENTER: April 21, 2022**

John T. Copenhaver, Jr.
Senior United States District Judge